**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

REGINALD JORDAN WATSON, )
)
            Plaintiff, )
) Case No. 12-CV-391-JED-PJC
v. )
)
FARMERS INSURANCE COMPANY, INC., )
)
           Defendant. )

## **OPINION AND ORDER**

**I.    Background**

This diversity action arises out of an automobile accident on May 13, 2011. Plaintiff, Reginald Watson, alleges that a third party, Ryan Rase, negligently changed lanes and struck Watson's vehicle, causing substantial damage to Watson's vehicle and serious personal injuries.[1] At the time of the accident, both the plaintiff and Rase had motor vehicle insurance pursuant to contracts with the defendant, Farmers Insurance Company, Inc. (Farmers).

Plaintiff was insured by Farmers under an automobile policy that provided liability insurance, medical pay insurance of $5,000, and uninsured / underinsured motorist (UM) coverage in the amount of $30,000 per person. The other driver, Rase, was also insured by Farmers under an auto policy which provided liability coverage, with $50,000 bodily injury insurance and $50,000 property damage coverage. Plaintiff's UM coverage policy provides in part that Farmers "will pay all sums which an insured person is legally entitled to recover as

---

[1] Any references in this Opinion and Order to Mr. Rase (who is not a party to this litigation) being negligent or a tortfeasor are not determinations by this Court that Mr. Rase was either. Rather, the parties to this suit do not now dispute that plaintiff had no fault in the accident, and the Court has thus assumed, only for purposes of discussing the facts of this case regarding the defendant's handling of plaintiff's UM insurance claim, that Mr. Rase was at fault.

damages from the owner or operator of an [underinsured] motorist vehicle because of bodily injury sustained by the insured person."

Farmers adjuster Joel Jackson was assigned to handle the plaintiff's third-party claims against Rase's policy coverage. Upon recognizing that both parties were Farmers insureds, Mr. Jackson requested that a separate "unit" be opened on plaintiff's UM coverage. The UM claim was assigned to Farmers representative Tonya Tabler, on May 17, 2011. On that same date, Tabler determined that the liability limits on Rase's coverage were $50,000 per person. The next day, plaintiff provided a statement about the May 13, 2011 accident to Tabler. In the plaintiff's recorded statement, he indicated that: he had seen Dr. Kondos after the accident; he had swollen ligaments in his knee, pulled muscles throughout his chest, and muscle spasms in his neck and back; and he had been prescribed medications. Plaintiff also informed Tabler that x-rays did not reveal broken bones, he had been unable to work and did not know how long he would be off work due to his injuries, and he was scheduled to return to the doctor the next day.

After talking to plaintiff, Tabler concluded that plaintiff did not have a UM claim because she believed his injuries would be fully covered by Rase's liability coverage. On May 23, 2011, Tabler sent a letter to plaintiff, informing him that Farmers was placing his UM claim on "inactive status."[2] The letter stated, in part:

> "Please advise our office if your claim exceeds the Farmers Insurance Company liability limits and their limits are exhausted or if a lawsuit is filed and we will immediately reactivate the Underinsured Motorist provision."

Farmers acknowledges that Tabler's letter was inaccurate in reporting that the liability insurance limits would have to be exhausted in order for Farmers to act on the UM claim. Tabler also testified that the foregoing paragraph of the letter was "inconsistent with [her] obligations as a

---

[2] On the date of Tabler's letter, the claim log shows that the UM claim was "closed."

2

UM adjuster" under Oklahoma law and that the letter provided plaintiff "a different standard than what Oklahoma law requires." Tabler also acknowledged in her deposition that her May 23, 2011 letter provided only one other condition under which the UM claim would be reactivated: a lawsuit against Farmers. She acknowledged that, contrary to the statement in her letter, a UM adjuster has a duty to independently evaluate a claim, regardless of the amount at which the third party insurer (here, also Farmers) evaluates the claim. After plaintiff engaged legal counsel, Tabler sent a different form of letter to counsel that was consistent with Oklahoma law. She testified that she has used that version of the letter when dealing with law firms and the incorrect version of the letter with unrepresented insureds when handling UM claims.

On the liability insurance claims side, Rase disputed that he was at fault and the third party adjusters (Joel Jackson acting on Rase's liability policy and Rebecca Prather acting on plaintiff's liability policy) assessed plaintiff and Rase each 50% fault, even though the police report had determined plaintiff to be without fault and Rase to have been at fault. According to plaintiff, that determination would reduce the availability of his UM coverage and, because he had been instructed by Tabler that he first had to exhaust Rase's liability limits before UM benefits could be paid, plaintiff had no choice but to await the fault and liability determinations made by the liability adjusters or to file a lawsuit against Farmers.

Farmers submitted an affidavit in which Tabler states that she did not attribute any fault to the plaintiff at the time that she deactivated the UM claim, and that, even had the third party claim settled at 50% liability, she would not have applied that percentage against plaintiff's UM claim unless plaintiff admitted 50% fault. Her claim notes and testimony, however, indicate that she deactivated the UM claim without identifying in writing who was at fault and without

3

assigning a percentage of fault, even though the system prompted her for a percentage of fault, and even though she testified that such information was necessary to fully adjust a UM claim:

> "Q. How can you fully adjust a UM claim without making a determination as to comparative negligence?
>
> A. You can't."

Also, as noted, her letter instructed that the claim would be reactivated only after the third party limits were exhausted or a lawsuit was filed. Tabler only entered a determination that Rase was 100% at fault after this lawsuit for bad faith was filed.

Tabler admitted that, at the time she deactivated the UM claim, she did not have a single medical document, had not requested a medical release, and had not reviewed any medical bills. She also acknowledged that, at no time did she discuss with plaintiff his pain and suffering and how the injury has affected him, although she admitted that such information is "important" to consider in UM claim adjustment. At the time she placed the UM claim on inactive status, she knew that plaintiff had been unable to work (although he had attempted to work a half day and had to return home) and that he intended to see his physician in the immediate future, but she did not request any further information regarding his injuries before deactivating his UM claim.

Plaintiff initiated this litigation on May 25, 2012. Only after the litigation was filed did Tabler request plaintiff's medical records and bills or a medical authorization. Months later, Tabler reevaluated the claim and, based on medical bills, again concluded that plaintiff's damages fell within the third party liability insurance limit. On November 19, 2013, well after this litigation was underway, plaintiff had a medical procedure which was apparently related to his injuries from the accident, and Farmers then paid plaintiff the full UM policy limit of $30,000.

Before the Court are two summary judgment motions filed by Farmers (Doc. 50, 81). Farmers asserts that it is entitled to summary judgment on plaintiff's breach of contract claim because, by paying the UM policy limits, plaintiff cannot establish the damages necessary to establish a breach of contract claim. (Doc. 81). Farmers also seeks summary judgment on plaintiff's bad faith claim because, according to Farmers, it was entitled to litigate a legitimate dispute regarding plaintiff's damages, and no reasonable jury could find that Farmers' handling and evaluation of plaintiff's UM claim was unreasonable or unfair. (Doc. 50).

## II.     Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "By its terms, [the Rule 56] standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson*, 477 U.S. at 247-48 (emphasis in original). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The courts thus determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52. The non-movant's evidence is taken as true, and all justifiable and reasonable inferences are to be drawn in the non-movant's favor. *Id.* at 255.

The Supreme Court recently reiterated that it is reversible error for a court to weigh the evidence or resolve any disputed issues in favor of the moving party. *See Tolan v. Cotton*, 572

U.S. \_\_\_, 2014 WL 1757856, *5 (2014) (per curiam). A district court may not credit the evidence of the party seeking summary judgment and ignore evidence offered by the non-movant. *Id.* at *6. Thus, reaching factual inferences that conflict with the non-movant's evidence is contrary to the "fundamental principle that, at the summary judgment stage, reasonable inferences should be drawn in favor of the nonmoving party." *Id.* The reason for this long-standing principle is that "witnesses on both sides come to [the] case with their own perceptions, recollections, and even potential biases. It is in part for that reason that genuine disputes are generally resolved by juries in our adversarial system." *Id.*

### III. Discussion

#### A. Property Damages Claim

Defendant first argues that it has no obligation to pay any property damages claim, because he did not have first party collision coverage, and his UM coverage is for bodily injury damages. It does not appear that plaintiff seeks to recover property damages in this suit, and plaintiff does not allege that he seeks to recover for property damage. As there does not appear to be any claim for property damage or collision coverage, the defendant's motion on this point is *denied*, as there is no such claim on which to grant judgment.

#### B. Bad Faith Tort

Under Oklahoma law, an insurer has an implied-in-law duty to act in good faith and deal fairly with its insured to ensure that the policy benefits are received, and a violation of that duty gives rise to an action in tort. *Bannister v. State Farm Mut. Auto Ins. Co.*, 692 F.3d 1117, 1123 n.8 (10th Cir. 2012); *Badillo v. Mid Century Ins. Co.*, 121 P.3d 1080, 1093 (Okla. 2005); *Christian v. American Home Assur. Co.*, 577 P.2d 899, 901-05 (Okla. 1978). An unwarranted delay in payment of benefits may support such a claim. *See Christian*, 577 P.2d at 904-05. An

6

insurer may not treat its own insured in the manner in which an insurer may treat third party claimants to whom no duty of good faith and fair dealing is owed. *Badillo*, 121 P.3d at 1093.

In seeking summary judgment on plaintiff's bad faith tort claim, defendant first argues that, because a plaintiff may not sue a third party insurance carrier under Oklahoma law, the Court should grant summary judgment on plaintiff's bad faith claim. It is true that, under Oklahoma law, an insurer has no duty to deal fairly and in good faith with a third party. *McWhirter v. Fire Ins. Exch.*, 878 P.2d 1056, 1059 (Okla. 1994); *see Allstate Ins. Co. v. Amick*, 680 P.2d 362, 364 (Okla. 1984). However, an insurance company does owe duties to its insured when dealing with a third party's claims against its insured. *See Badillo*, 121 P.3d at 1093.

Here, the plaintiff's bad faith claim is principally premised upon the UM adjuster's actions and the alleged fallout therefrom, including the following:

(1) Tabler, the UM adjuster acting for the defendant, deactivated the UM claim, without indicating in the claim file that plaintiff was without fault or assessing a 0% comparative fault to plaintiff, even though it is impossible to fully adjust a UM claim without doing so;

(2) At the time she deactivated the UM claim, Tabler had not conducted any independent evaluation of the plaintiff's claim, reviewed a single medical document, requested a medical release, reviewed any medical bills, discussed with plaintiff his pain and suffering or how the injury had affected him, or asked about any lost wages, even though she knew that plaintiff was still treating and had been unable to work at the time he provided his statement;

(3) Farmers' UM, third party, and medical pay adjusters all have access to the same claim files and claim notes, but Tabler did not share with plaintiff the information she was privy to (including the limits of Rase's liability insurance) or inform him of the benefits to which he was entitled under the UM coverage;

(4) According to plaintiff, Tabler should have recorded a finding that plaintiff was 0% at fault, investigated the extent of plaintiff's injuries, and promptly paid him under the UM coverage. Instead, she did no investigation, deactivated the claim file without offering any payment of UM insurance benefits for plaintiff's injuries, and her failure to make a finding and record a fault percentage contributed to or permitted the adjuster on plaintiff's third-party claim against Rase (Joel Jackson) and the adjuster handling Rase's claim against plaintiff's liability policy (Rebecca Prather) to initially agree upon attributing 50% fault to plaintiff and 50% to Rase, which denied or delayed any payment to plaintiff and would have impacted his UM claim by 50%;[3]

(5) Tabler (incorrectly) informed plaintiff by letter that he would have to either exhaust the third-party liability limits or file a lawsuit against Farmers before Farmers would reactivate his UM claim;

(6) Tabler knew that the information in her letter was not consistent with her duties as UM adjuster under Oklahoma law;

(7) Because of Tabler's directive that the UM claim would not be reactivated unless and until plaintiff exhausted the third party claim limits or filed suit against Farmers, plaintiff was forced, first, to rely upon the third party claims adjusters (who were assessing plaintiff with 50% liability) rather than receiving an independent assessment of his claims and first dollar, primary

---

[3] Farmers suggests that the actions of Prather and Jackson are irrelevant. However, given that Farmers informed plaintiff that he must first actually exhaust Rase's liability coverage before receiving UM benefits, the facts relating to the third party liability claims are relevant, at least to any damages plaintiff may have incurred due to the delay in receipt of any benefits for his personal injuries, because he had not received any benefits on the liability side due to the assessment of 50% liability against him. Moreover, Prather was acting on Rase's claim against plaintiff's liability insurance, and plaintiff was not a stranger or a third party to his own liability insurance. *See Badillo*, 121 P.3d at 1093 (noting generally an insurer's obligation to act in good faith towards its insured in handling claims of third party against insured's liability policy).

coverage to which he was entitled under his UM coverage, and, second, to hire an attorney to file suit against Farmers; and

(8) The foregoing constituted a bad faith attempt by the defendant to avoid payment to plaintiff under his UM policy.

While the underlying facts upon which plaintiff relies are intertwined with facts relating to the third party coverage, the gravamen of his claim for bad faith is based upon actions by the UM adjuster, which plaintiff alleges constituted a bad faith breach of Farmer's obligations under established Oklahoma UM law and which caused an unwarranted delay in his receipt of compensation for his injuries. Accordingly, the Court rejects Farmers' argument that summary judgment must be entered merely because the plaintiff's bad faith arguments refer to facts relating to the handling of his third party claims against Rase's liability coverage. Those facts may be relevant, not to show that the third party claims adjusters acted in bad faith, but to the issue of whether Farmers acted reasonably when it deactivated the UM claim while third party insurance payments were unavailable to him.

Farmers next argues that it is entitled to judgment as a matter of law because Ms. Tabler testified that she did not apportion any fault percentage to the plaintiff and that she would not have assessed 50% fault (which was at one time assessed against plaintiff by the third party adjusters) without plaintiff actually admitting he was 50% at fault. However, construing the evidence in plaintiff's favor, there is a genuine dispute of fact as to Tabler's actions regarding findings of comparative fault. The computer prompted Tabler to enter a fault percentage, and Tabler admits that she could not fully adjust a UM claim without a fault assessment, yet she deactivated or closed the UM claim without assessing fault or recording any percentage of fault, and she only assessed 100% fault to Mr. Rase after the filing of this lawsuit. To wholly accept

9

her testimony as to what she would have done or what was in her mind, without considering her other testimony and the evidence in the claim file, would require the Court to improperly weigh all of the evidence in Farmers' favor and ignore the evidence that favors plaintiff's position. *See Tolan*, 2014 WL 1757856, at *5.

Defendant next alleges that there were legitimate disputes regarding the amount of plaintiff's personal injury damages which preclude a finding of bad faith liability. When an insurer denies a claim "solely because of the existence of a legitimate dispute," there can be no inference of bad faith. *Bannister v. State Farm Mut. Auto. Ins. Co.*, 692 F.3d 1117, 1127 (10th Cir. 2012) (quoting *Oulds v. Principal Mut. Life Ins. Co.*, 6 F.3d 1431, 1442 (10th Cir. 1993)). "However, 'a legitimate dispute as to coverage will not act as an impenetrable shield against a valid claim of bad faith.'" *Id.* (quoting *Timberlake Constr. Co. v. U.S. Fid. & Guar. Co.*, 71 F.3d 335, 343 (10th Cir. 1995)). If the evidence establishes that there was a legitimate dispute as to coverage under the policy, and the insurer's position was reasonable in light of the facts known or knowable to it, then the insurer does not breach the duty of good faith merely by refusing to pay the claim. *Id.* at 1127-1128. However, even where there is a legitimate dispute, a jury may decide the issue of bad faith if there is evidence that the insurer did not actually rely on that legitimate basis to deny coverage or that the insurer failed to adequately investigate the claim and a proper investigation would have revealed material information. *Id.* at 1128.

Plaintiff alleges that Tabler failed to conduct any investigation. The evidence reveals a genuine issue of fact as to whether she conducted an adequate investigation before determining that plaintiff's damages would not exceed Rase's liability limits. Farmers contends that it was plaintiff's delay in providing medical records and bills which led to Ms. Tabler concluding that plaintiff's damages would be covered within Rase's $50,000 liability limits. However, the facts

construed in plaintiff's favor reveal a genuine dispute of material fact as to whether Farmer's actions were based upon a legitimate dispute. Ms. Tabler deactivated the UM claim and determined that plaintiff's damages would be covered by Rase's liability limits even though she knew that plaintiff was still being treated, and she had not asked for any medical bills or records, evaluated plaintiff's pain and suffering, or asked about any lost wages. She also inaccurately informed plaintiff that he must first exhaust the liability limits of Rase's liability policy or file a lawsuit against Farmers before the UM claim would be reactivated.

Oklahoma law is clear that a "UM carrier is directly and primarily liable to its insured for the entire loss to be indemnified." *Burch v. Allstate Ins. Co.*, 977 P.2d 1057, 1065 (Okla. 1998). UM coverage "is primary, meaning that an uninsured motorist carrier is liable for the entire amount of its insured's loss from the first dollar up to the UM policy limits without regard to the presence of any other insurance." *Id.* at 1058. The purpose of Oklahoma's statutory UM scheme is to assure each UM insured person the full contracted coverage. *Id.* at 1064. Thus, upon payments of its insured's loss, the UM carrier is free to proceed in its own right against the tortfeasor. *Id.* at 1065. That does not mean that "the UM carrier [is] the final indemnitor for the injured party's loss [because the] *UM carrier is statutorily subrogated* to the rights of its insured against the tortfeasor and the tortfeasor's liability carrier, if any there be, and must seek recovery of paid indemnity through an exercise of its right to subrogation." *Id.* (emphasis in original). In *Burch*, the Oklahoma Supreme Court made it clear that there is no exception to the general rule (that UM coverage is primary, first dollar coverage) in cases where one insurance company provides the liability insurance for the tortfeasor and the UM coverage for the injured claimant. *Id.*

Here, while the liability adjusters for Rase and plaintiff were apparently wrangling over which driver was at fault and to what extent, plaintiff alleges that no insurance benefits were available to him for his injuries under the tortfeasor's liability policy, such that his UM carrier had a duty to independently investigate his claim and to promptly compensate him for his injuries. But the adjuster on his UM claim promptly deactivated his UM claim and informed him that he would either have to exhaust the limits of Rase's third party liability insurance or file a lawsuit against Farmers before the UM claim would be reactivated. The UM adjuster acknowledged that her actions and her letter were inconsistent with the duties of a UM insurance carrier. Plaintiff claims that the defendant's actions were designed to avoid paying him or to reduce the amount that would be paid to him. The evidence, drawn in plaintiff's favor, establishes the existence of material fact issues preventing summary judgment on plaintiff's bad faith tort claim.

Hence, defendant's motion for summary judgment on plaintiff's bad faith tort claim is *denied*.[4]

### C. Breach of Contract Claim

Farmers argues that its November, 2013 payment to plaintiff of the UM policy limits extinguishes plaintiff's claim for breach of contract, because plaintiff cannot establish damages for breach of contract. Courts applying Oklahoma law have generally held that an insurer's liability for breach of a UM insurance contract is limited to the amount of the UM policy coverage. *See Carney v. State Farm Mut. Auto. Ins. Co.*, 877 P2d 1113, 1119 (Okla. 1994) ("UM coverage merely provides a source of recovery for personal injuries when an innocent

---

[4] Because plaintiff's tort claim will be tried to a jury, the Court declines at this time to grant judgment as a matter of law on punitive damages. Defendant has also filed a motion in limine regarding the punitive damages claim, which the Court will address in a separate order.

victim cannot otherwise recover from the tortfeasor. The UM carrier is liable for damages caused by the tortfeasor and for statutorily mandated prejudgment interest on those damages. *But the carrier's liability is limited by the contract, and we find no public policy reason to extend that liability beyond the terms of the contract.*"). In this case, it is undisputed that the terms of the plaintiff's UM insurance contract provided a limit of $30,000 coverage which an insured person is "legally entitled to recover as damages from the [uninsured or underinsured tortfeasor] because of bodily injury sustained by [that] insured person." Under the reasoning and language of *Carney*, and applying the language of the plaintiff's UM insurance provision, the contract damages for a breach of an insurance contract are limited to the policy limits.

Oklahoma law is also clear, and the defendant agrees, that where there is evidence of a breach of an insurer's implied duty of good faith and fair dealing, such as where a delay in payment of insurance benefits is unwarranted, the insured may maintain an action *sounding in tort* and may recover consequential damages. *Christian*, 577 P.2d at 904-05 ("We approve and adopt the rule that an insurer has an implied duty to deal fairly and act in good faith with its insured and that the violation of this duty gives rise to an action in tort for which consequential and, in a proper case, punitive, damages may be sought."). Thus, where a plaintiff maintains a proper bad faith tort claim against an insurer, he may seek consequential damages and is not limited to recovering only the amount of the policy limits. *Id.* at 903 ("the obligation of an insurer to its insured upon proper presentation of a valid claim . . . is not limited to the payment of money only").

Plaintiff asserts that damages over and above policy limits are recoverable on a claim for breach of a UM insurance contract under Oklahoma law. However, the Oklahoma Supreme Court's decisions in *Carney* and *Christian* indicate that contract damages for the breach of an

13

insurance contract are limited to policy limits. For example, the court in *Christian* recognized that the Oklahoma damages statute for the breach of a contract "to pay money only" (*Okla. Stat. tit. 23, § 22*) would not properly compensate an insured who was injured by a bad faith delay of payment of insurance benefits. 577 P.2d at 903-05. Accordingly, the *Christian* court held that an insured may maintain an action *in tort* to recover consequential and punitive damages where there is evidence of a breach of good faith and fair dealing. *Id.* In *Carney*, the court noted that Oklahoma courts had previously imposed liability over policy limits where the insurer had not acted in good faith and the *Carney* court distinguished those cases on the basis that there was no evidence in *Carney* of bad faith conduct:

> Under certain conditions, this Court has imposed liability on insurers in excess of policy limits. . . . [In those cases,] the Court recognized the duty to act in good faith toward the insured. . . . For the breach of this duty, this Court imposed liability in excess of policy limits. . . . But in the case at bar, there is no evidence before this Court that [the insurer's] conduct in litigating the appellant's claim constituted bad faith.

877 P.2d at 1115. The court then announced that "the [insurance] carrier's liability is limited by the contract," which the court found to be policy limits. *Id.* at 1118-19. The court found that, "[w]hen an insurer's delay in paying is unwarranted, such as to amount to bad faith, our case law is sufficient to protect the insured under such circumstances." *Id.* at 1119.

From the language of these decisions, the Oklahoma Supreme Court distinguishes between contract damages to pay money owed on an insurance policy, which is ordinarily limited to policy limits, and those additional damages which flow from a tort suit for bad faith. In this case, as noted in *Carney*, the plaintiff is protected by his tort claim for alleged bad faith breach and, so long as he is able to establish for the jury that defendant's conduct (including, for example, the alleged delay in payment of the UM policy limits) was in bad faith, he will be able to recover compensatory damages and, if appropriate, punitive damages.

14

The defendant's payment of policy limits renders plaintiff's breach of contract claim moot, because plaintiff cannot show that he has contract damages, and he is protected by his tort claim for bad faith. The defendant's motion for summary judgment on plaintiff's contract claim is thus *granted*.

**IV.    Conclusion**

The defendant's motion for partial summary judgment (Doc. 50) is *denied*, and the defendant's motion for summary judgment on plaintiff's contract claim (Doc. 81) is *granted*, in accordance with this Opinion and Order.

In light of this Opinion and Order, the parties are directed to file a revised, proposed pretrial order by **June 9, 2014**.

SO ORDERED this 29th day of May, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE