# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

REGINALD JORDAN WATSON,       )
                              )
            Plaintiff,        )
                              )     Case No. 12-CV-391-JED-PJC
v.                            )
                              )
FARMERS INSURANCE COMPANY, INC., )
                              )
            Defendant.        )

## OPINION AND ORDER

The Court has for its consideration several issues presented in three motions in limine filed by defendant, Farmers Insurance Company Inc. (Farmers). (Doc. 49, 52, 53-54).

**A.    Motion Regarding Personal Injury Damages Issues** (Doc. 49)

Farmers moved in limine to prohibit plaintiff from introducing evidence regarding past and future medical treatment and expenses in the absence of expert testimony that plaintiff's medical treatment was causally related to the accident. (Doc. 49 at 1-2, subparts a, b, and d). After filing that motion, Farmers paid plaintiff the policy limits on plaintiff's uninsured / underinsured motorist (UM) policy and, in reply, Farmers thus indicates that its motions in limine as to medical treatment and bills are moot. (*See* Doc. 65). Accordingly, the Court finds the Motions in Limine Regarding Personal Injury Damages (Doc. 49) to be *moot* to the extent Farmers initially sought a ruling from this Court prohibiting evidence of medical treatment or bills without expert testimony.

Farmers continues to assert one issue from its motion: that plaintiff should be prohibited from introducing *verbal* out-of-court statements by his treating physicians, because such statements are hearsay. (Doc. 65 at 2-3). Farmers "agrees that all of [plaintiff's] medical bills and records in its claim file are admissible" (*id.* at 2), but maintains that plaintiff should be

prohibited from testifying about verbal out-of-court statements made by his physicians (*id.* at 3). Plaintiffs' response on this issue was directed to his medical bills and records, which are no longer at issue because Farmers agrees the records are admissible and now limits its request to verbal physician statements. As it does not appear that there is a dispute as to the verbal statements by plaintiff's physicians, Farmers' motion in limine will be *granted* on the issue of verbal hearsay statements made by plaintiff's physicians. To the extent that plaintiff has a purpose for introducing such verbal statements that would render the statements not hearsay (e.g. they are introduced for some purpose other than for the truth of the matter asserted) or subject to a hearsay exception, plaintiff's counsel shall bring the matter to the Court's attention, outside the presence of the jury, prior to questioning or other reference to such statements. Also, while plaintiff is prohibited from introducing any such verbal statements that are hearsay, he is not prohibited from testifying as to his personal understanding of his own injuries.

**B.     Motion Regarding Punitive Damages** (Doc. 52)

Farmers requests that the Court enter a pretrial ruling prohibiting the introduction of Farmers' financial worth or, in the alternative, that any such evidence should be permitted only after the Court has determined that the issue of punitive damages may be submitted to the jury. In his response to the motion, plaintiff agrees to the alternative requested by Farmers and adds that plaintiff would agree to a two stage trial, bifurcating punitive damages into stage two.

In reply, Farmers asserts that, even if the issue of punitive damages is presented to the jury, "a defendant's financial worth is not relevant to the jury's determination of punitive damages." (Doc. 67 at 2-3). In support of that argument, Farmers contends that *BMW of North America, Inc. v. Gore*, 517 U.S. 559 (1996) and *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408 (2003) provide a "clear mandate . . . [that] a defendant's financial worth is not relevant

to the jury's determination of punitive damages [and] [a]ny punitive damages award based upon Farmers' financial worth or other similar criteria would be unconstitutional."

Farmers' assertion that financial condition may not be considered in a punitive damages phase is inconsistent with Supreme Court and Tenth Circuit decisions. Subsequent to *BMW*, the Tenth Circuit continues to consider the wealth of a defendant to be a "relevant factor" in considering punitive damages. *See Deters v. Equifax Credit Info. Serv., Inc.*, 202 F.3d 1262, 1272 (10th Cir. 2000) ("In assessing the reasonableness of the punitive damages award in the instant case, we must consider the purposes of such a remedy, namely to punish and deter. In this respect, the wealth and size of the defendant are relevant considerations."). In *Continental Trend Resources, Inc. v. Oxy USA Inc.*, 101 F.3d 634, 641 (10th Cir. 1996), decided after *BMW*, the Tenth Circuit stated:

> We do not read the Court's statements [in *BMW*] to mean that the wealth of the defendant is irrelevant. From the Court's statements we conclude that a large punitive award against a large corporate defendant may not be upheld on the basis that it is only one percent of its net worth or a week's corporate profits. Yet, *wealth must remain relevant*, because $50,000 may be an awesome punishment for an impecunious individual defendant but wholly insufficient to influence the behavior of a prosperous corporation. The Supreme Court's [*BMW*] opinion seems to ask for the least punishment that will change future behavior; but that is difficult to apply as a constitutional principle. . . . We mention another factor relevant to wealth that we believe may be considered in setting and reviewing punitive awards in particular circumstances. A rich defendant may act oppressively and force or prolong litigation simply because it can afford to do so and a plaintiff may not be able to bear the costs and the delay. We have held that the costs of litigation to vindicate rights is an appropriate element to consider in justifying a punitive damages award.

*Continent Trend*, 101 F.3d at 641-42 (emphasis added) (citations omitted).

Moreover, the Supreme Court's decision in *Campbell* likewise does not announce a rule prohibiting all consideration of a defendant's wealth. In *Campbell*, the Utah Supreme Court sought to justify an excessive punitive damages award, in part, on the defendant's "massive

3

wealth." 538 U.S. at 415. The United States Supreme Court noted that "[t]he wealth of the defendant cannot justify an *otherwise unconstitutional* punitive damages award." *Id.* at 427 (emphasis added). However, the Court did *not* pronounce that a defendant's wealth cannot be considered by a jury when determining whether and to what extent to award punitive damages. In fact, the Court itself made clear that the jury's consideration of wealth in imposing punitive damages is lawful and proper: "('[Wealth] provides an open-ended basis for inflating awards when the defendant is wealthy. . . *That does not make its use unlawful or inappropriate*; it simply means that this factor cannot make up for the failure of other factors, such as 'reprehensibility,' to constrain significantly an award that purports to punish a defendant's conduct.')" (quoting *BMW*, 517 U.S. at 591 (Breyer, J., concurring)).

As the Supreme Court in *Campbell* noted, "punitive damages serve a broader function [than compensatory damages]; they are aimed at deterrence and retribution." 538 U.S. at 416. The Tenth Circuit has concluded that a defendant's financial wealth is a relevant factor to consider in light of those purposes of deterrence and retribution. *See Continental Trend*, 101 F.3d at 641; *Deters*, 202 F.3d at 1272.

Based on the foregoing, Farmers' request that the Court prohibit introduction of Farmers' financial wealth is *denied*. However, the trial will be divided into two phases. In the first phase, the jury will consider the liability, if any, of Farmers, any compensatory damages, and whether Farmers acted with the requisite level of reckless disregard or malice to be held liable for punitive damages. The trial will proceed to a second phase only if the jury finds, by clear and convincing evidence, that Farmers acted with the requisite reckless disregard or malice to be held liable for punitive damages. *See Okla. Stat.* tit. 23, § 9.1. In that second phase (if there is one), the jury will consider evidence regarding the amount of punitive damages, if any, to be awarded.

Plaintiff did not dispute Farmers' additional request that plaintiff be prohibited from requesting that the jury award punitive damages based upon a percentage of the value of Farmers' assets or profits. As to that issue, Farmers' motion is thus *granted in part*.

**C.     Motion Regarding Plaintiff's Bad Faith Claims** (Doc. 53)

Farmers requests that the Court enter an order limiting evidence and argument at trial in several ways. Plaintiff did not respond or directly object to most of those matters, and Farmers' motion on those matters is accordingly *granted*, and the parties shall not introduce evidence or present any argument in the presence of the jury on the following issues: (1) other bad faith lawsuits and Insurance Commissioner complaints against Farmers; (2) that any amount of actual damages awarded by the jury could limit the amount of any punitive damages to be awarded; (3) that bad faith lawsuits, juries, or punitive damages place the only limits on insurers' conduct; (4) that it is in the jurors' best interests to rule in plaintiff's favor; (5) that Farmers, or the insurance industry as a whole, systematically acts in bad faith; (6) that, if the jury renders a large award, the media will report that fact to the public; (7) that the Court supports plaintiff's position; (8) that Farmers is a large and/or foreign corporation; (9) that part of any judgment in favor of plaintiff would be taxed; and (10) that the jury should award actual damages to punish Farmers.

In response to Farmers' request that the Court limit witnesses from testifying about any other person's motives or thoughts, plaintiff agrees that no witness should be permitted to speculate as to how an adjuster felt or why an adjuster took a particular action, but asserts that his counsel should be permitted to elicit such testimony from the adjusters themselves and that plaintiff should be allowed to testify about the effect of an adjuster's conduct on him. (Doc. 61 at 3). As the parties appear to agree as to the scope of any witness's testimony regarding another person's thoughts or motives, the Court finds the defendant's motion on this issue *moot*.

Farmers requests that the Court prohibit plaintiff's counsel from indicating that any legal authorities support plaintiff's position. Plaintiff objects and argues that his counsel should be permitted to discuss any law that supports a finding of bad faith. In reply, Farmers agrees that it is appropriate that plaintiff's counsel inquire of Ms. Tabler's understanding of her obligations when adjusting a UM claim. Farmers' motion in limine on this issue is *granted in part and denied in part*. At this pretrial stage, the Court can foresee that broad questions about Tabler's understanding of her obligations under Oklahoma law may be appropriate. However, Ms. Tabler is apparently not a lawyer, so it would be inappropriate (and not helpful to a jury) to cross examine her on particular points of specific statutory or case law unless there is otherwise some indication that she was aware of it at the time she took actions on plaintiff's UM claim. In addition, the Court has yet to determine whether Farmers' proposed expert witness will be permitted to testify and, if so, to what extent. If the Court were to allow such an expert, whom Farmers proposes to introduce as to a UM adjuster's "standard of care," it is foreseeable that plaintiff may be allowed to cross examine such an expert regarding the requirements of Oklahoma law.[1]

---

[1] This very problem points to reasons the Court has concerns about whether Farmers' expert will offer testimony that is helpful to the jury. For example, to the extent that he proposes to testify regarding the "standard of care" applicable to a UM adjuster's conduct in this case, that may invade the province of this Court to instruct the jury on governing law. To the extent that the expert would opine as to whether Farmers' conduct in handling plaintiff's UM claim was reasonable, that may not be helpful to a jury, where the jury (with proper instructions on the law) "is capable of assessing for itself" whether or not Farmers' actions constituted bad faith. *See Thompson v. State Farm Fire & Cas. Co.*, 34 F.3d 932, 941 (10th Cir. 1994). The Court has discretion to permit or exclude an expert's testimony "on an issue that a jury is capable of assessing for itself." *Vining v. Enterprise Fin. Group, Inc.*, 148 F.3d 1206, 1218 (10th Cir. 1998). The Court will reserve ruling on the admissibility of the expert's testimony under *Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579 (1993) until it has reviewed the parties' forthcoming submissions regarding the expert opinions which Farmers wishes to introduce.

In addition, the Court will instruct the jury on the law to govern their determination of plaintiff's bad faith claim against Farmers. This Court instructs the jury prior to closing arguments, so that counsel may, where appropriate, utilize a particular instruction in his or her closing arguments. The Court will address any additional specific objections on this topic in the course of trial.

Farmers also requests that the Court prohibit the plaintiff from indicating that he will have to pay attorney fees out of any recovery, and the plaintiff generally objects. Plaintiff indicates that his counsel does not plan to discuss his fees with the jury, but that the plaintiff should be able to discuss the fact that he had to hire an attorney to file a lawsuit in order to obtain benefits under his UM policy. The Court agrees. The UM adjuster sent a letter informing plaintiff that, in order for his UM claim to be reactivated, he would have to first exhaust the tortfeasor's liability coverage or "file a lawsuit" against Farmers. As plaintiff notes, plaintiffs inexperienced in the law often hire attorneys to file lawsuits. Farmers' motion in limine on this issue is *denied*.

**D.     Conclusion**

Farmer's motion regarding personal injury damages (Doc. 49) is *granted in part* as to verbal hearsay statements by physicians and is *moot* on the remaining issues raised therein. The motion regarding punitive damages (Doc. 52) is *granted in part and denied in part* as set forth above. Farmer's motion regarding bad faith claims (Doc. 53) is, in part, *moot*, and is otherwise *granted in part and denied in part* as specified above.

SO ORDERED this 2nd day of June, 2014.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE